IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

BRIAN MARSHALL AND PAM MARSHALL                                          PLAINTIFFS
Individually, and as Parents and next
Friends of CHILD DOE, a Minor

v.                              CASE NO. 1:05-CV-0055 JLH

BATESVILLE SCHOOL DISTRICT; ROBERT                                       DEFENDANTS
WILLIAMSON, Individually and in His
Capacity as Principal; TAMMY GILMORE,
Individually and in Her Capacity as Teacher;
CHRIS HARDIN, Individually and in His Capacity
as Coach; and JERRY ROSE Individually and in His Capacity
as Superintendent

**OPINION AND ORDER**

Brian and Pam Marshall brought this action individually and as parents and next of friends of Child Doe, a minor, against Batesville School District; Robert Williamson, individually and in his capacity as principal; Tammy Gilmore, individually and in her capacity as teacher; Christ Hardin, individually and in his capacity as coach; and Jerry Rose, individually and in his capacity as superintendent. After voluntarily dismissing their claims against all named individuals in their official and individual capacities, the Marshalls' remaining allegations against Batesville School District involve claims under § 504 of the Rehabilitation Act, the Americans with Disabilities Act, Title IX of the Education Amendments of 1972, and the equal protection and due process clauses of the Constitution of the Untied States. Defendants filed a motion for summary judgment, arguing that the Marshalls' federal claims should be dismissed. For the reasons set forth below, summary judgment is granted in favor of Batesville School District.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party carries its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## II.

Child Doe began attending high school as a ninth-grader in the Sulphur Rock School District, Batesville School District's predecessor in interest,[1] in August 2002. The Marshalls claim that, shortly thereafter, Doe approached Robert Williamson, the principal at Doe's high school, to request that she be allowed to graduate early from high school. The Marshalls state that Williamson initially withheld and subsequently delayed his approval and continually harassed Doe regarding her request

---

[1]Sulphur Rock School District was annexed by Batesville School District in 2005.

and her abilities to graduate early. The complaint alleges that Williamson delayed approval of college courses after pre-approval had been given and fabricated the existence of an approval process involving a separate committee and the school board, when in fact he knew that no such process was necessary. The complaint also states that Williamson told Doe that she lacked the maturity to graduate early or to handle college. The Marshalls assert that a guidance counselor, Mr. Crow, eventually intervened on Doe's behalf in March 2004, and, as a result, Doe was informed that she would be allowed to graduate early in 2005 and would be eligible for the honors of valedictorian and salutatorian.

In June 2004, Sulphur Rock School District Board of Directors adopted the 2004-2005 student handbook, which included a new policy limiting valedictorian and salutatorian honors to four-year seniors or those graduating with at least seven semesters of high school. The new policy also stated that all students, even those planning to graduate early, would participate in activities with their chronological class. After their approval, the policies were included in the 2004-05 school handbook. The school district contends that its decision was made for legitimate educational reasons, including parental concerns that early junior graduates were taking honors rightly belonging to four-year senior graduates.

In late January 2005, Doe's dating relationship with a high school senior, S.G., ended. Shortly thereafter, S.G. confronted Doe from behind by grabbing and pulling at the clothing around her neck and grabbing her by the arm. Doe suffered physical and emotional damage as a result of S.G.'s conduct. Doe went to the school office and called her mother. Crow asked Doe what had happened, and Doe informed Crow that S.G. had choked and grabbed her. Doe informed Williamson of that event as well as previous instances of S.G.'s physically and emotionally abusive

behavior. Williamson instructed her to talk to Jerry Hagar, the school resource officer. Doe states that Williamson and Hagar discussed ways to separate Doe from S.G., including putting them in different sections where possible or ensuring that teachers never left them alone if they could not be placed in different classes.

S.G. was suspended from school for three days. Hagar conducted an investigation and produced a Criminal Information Report, although he did not file criminal charges against S.G. Williamson and Hagar also met with S.G. and instructed him to avoid all contact with Doe, and Williamson instructed the school staff that they should not allow S.G. and Doe to interact or be left alone together. Doe states that Williamson did not make himself available for continued meetings with her. Doe also states that Williamson and Hagar refused her access to a video surveillance tape from a hallway camera. Williamson and Hagar reviewed the tape and assert that it did not capture the incident between Doe and S.G.

Doe claims that S.G. continued to harass her in classes, especially history and English. Her history teacher, Coach King, heard S.G. talking and told him to be silent. Another teacher, Mr. Jones, instructed S.G. not to speak to Doe and allowed Doe to go to a different classroom. Doe's English teacher, Ms. Gilmore, would leave the room often. When Doe complained that S.G. was making derogatory comments about her to other classmates, Gilmore told S.G. to leave her alone and not talk to her.

During the course of an argument between Doe and S.G. in the school hallway, S.G's sister, Nina Brocaw, who was a teacher's aide, stepped between Doe and S.G. and told them to go to class. Doe began arguing with S.G., at which point Doe also directed vulgarities at her. Doe had to report to the school office, where Crow counseled her, but she received no punishment from Williamson.

However, the school softball coach, Chris Hardin, learned of the incident and disallowed her from being a part of the softball team. Hardin says that she was punished for violation of his rules regarding the use of profanity directed at a school official.

On March 3, the Marshalls wrote the school district, informing Williamson that Doe was experiencing severe stress and anxiety due to the abuse from S.G. and continued harassment. The school decided to treat Doe as a student with a disability under § 504 of the Rehabilitation Act and Americans with Disabilities Act and allowed her a shortened school day and additional time for completing assignments. The school district then decided to allow Doe to do all schoolwork at home and report to school only for taking tests and turning in assignments.

Doe eventually completed the necessary schoolwork to graduate early from high school. She claims that the change in school policy made her ineligible for valedictorian honors. Transcript records indicate that there was at least one graduate with a higher grade point average than Doe, but Doe may have had the second-highest grade point average of the 2005 graduates. Doe did not apply for valedictorian or salutatorian scholarships at the three schools she was considering. Doe also claims that the school counted as absences the days she did schoolwork at home, resulting in her being ineligible for the Arkansas Scholars Scholarship. However, according to Crow, school records indicate that Doe had too many absences to be eligible for that scholarship even before she began doing schoolwork at home. Doe did receive the Newark Chamber of Commerce scholarship in the amount of $500, for which she was nominated by Williamson.

**III.**

The school district first argues that the Marshalls lack standing to bring suit as parents and

next friends of Doe. Standing is determined at the time of the lawsuit's commencement. *Sterger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (citing *Park v. Forest Serv. of the U.S.*, 205 F.3d 1034, 1038 (8th Cir. 2000)). This Court thus considers the facts as they existed at the time the Marshalls filed suit. *See id.* Because Doe was a minor at the time suit was filed, the Marshalls had standing as parents and next friends of Doe to file suit on her behalf, and they maintain that standing even though Doe is no longer a minor.

The school district next argues that it did not violate Doe's rights under Title IX. The United States Supreme Court stated the standard for a public school district's Title IX liability in *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999). A school district is liable under Title IX if it knowingly refused to take any action in response to or was deliberately indifferent to instances of sexual harassment. *Davis*, 526 U.S. at 651, 119 S. Ct. at 1675. A Title IX plaintiff must demonstrate that the sexual harassment is "so severe, pervasive, and objectively offensive, and [] so undermines and detracts from the [plaintiff's] educational experience that the [plaintiff is] effectively denied equal access to an institution's resources and opportunities." *Id.* The Court must consider a constellation of surrounding circumstances, expectations, and relationships, and must "bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults." *Id.* Where the conduct involves student-on-student harassment, a plaintiff may recover against the school district only if the behavior is so severe, pervasive, and objectively offensive that the plaintiff is denied equal access to education. 526 U.S. at 652, 119 S. Ct. at 1675. Deliberate indifference means that the school district knew that its actions would result in a substantial risk of serious harm, *S.S. v. McMullen*, 225 F.3d 960, 968 (8th Cir. 2000), and must either directly cause the occurrence of the

abuse or make the student vulnerable to it. *Ostrander v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003). A school district will not be held liable under Title IX even for a teacher's sexual harassment of a student without a demonstration of actual notice and deliberate indifference. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292-93, 118 S. Ct. 1989, 2000, 141 L. Ed. 2d 277 (1998).

In *Ostrander v. Duggan*, a college student was sexually assaulted by a fellow student and sued the university under Title IX. 341 F.3d at 747. After the plaintiff complained to a university office, university officials met with the chapter advisor of the organization to which her attacker belonged, wrote the organization's national president regarding the allegations, and performed an internal investigation. *Id.* at 751. Although the plaintiff was dissatisfied with the university's ultimate decision not to impose sanctions against the organization, the court determined that the university officials' conduct was not "clearly unreasonable" so as to make it liable under Title IX. *Id.*

In *Gebser v. Lago Vista Indep. Sch. Dist.*, the plaintiff sought damages from the school district under Title IX for a teacher's sexual harassment. 524 U.S. at 274, 118 S. Ct. at 1991. In that case, the plaintiff's primary allegation was that the school district failed to "promulgate and publicize an effective policy and grievance procedure for sexual harassment claims." *Id.* at 291, 118 S. Ct. at 2000. The Supreme Court held that the plaintiff's allegations did not demonstrate that any school district officials had actual notice of the teacher's alleged sexual harassment or that they were deliberately indifferent toward harassment complaints, and thus the Supreme Court held that the school district could not be held liable under Title IX. *Id.* at 291-93, 118 S. Ct. at 2000.

In this case, the Marshalls have failed to present evidence that the school district had actual knowledge of any sexual harassment on the part of Williamson or that the school district was

deliberately indifferent to the allegedly continuing harassment from S.G. Even if it were true that Williamson harassed Doe about her request to graduate early and delayed the approval of her request, the additional facts show that Doe ultimately received permission to graduate early and incurred no damages as a result of any delay in approval. There are no facts indicating that Doe ever complained of harassment by Williamson, sexual or otherwise, and thus the school district cannot be said to have had actual knowledge of any harassment on the part of Doe's teachers. With regard to the school official's handling of harassment from S.G., Williamson and Crow met with Doe after the initial incident between her and S.G. Williamson instructed Hagar to conduct an investigation into the matter, and S.G. was suspended for three days. Hagar completed a Criminal Information Report on S.G. Williamson informed the school staff of the incident and told them not to allow interaction between S.G. and Doe, to the degree possible. Although Doe alleges that S.G. continued to make comments about her to other classmates while in class, Doe also admits that the school teachers would order S.G. not to talk to or interact with Doe. Doe admits that she was allowed to move to a different class when possible, and at least one teacher gave her the option of moving to a different seat. After Doe complained of migraine headaches and continued harassment from S.G., the school allowed her to do her schoolwork from home. That some teachers were uncooperative in helping Doe with assignments when she would go to school seeking assistance, even if true, does not create liability for the school district under Title IX, nor is it relevant to whether Doe was subjected to sexual harassment from S.G. or others. Although the Marshalls may not be satisfied with the extent of the school staff's response to Doe's charges, the facts even as alleged by Doe do not support a reasonable conclusion that the school district was deliberately indifferent to her claims. *See Ostrander*, 341 F.3d at 751.

The Marshalls also claim that the school district violated Doe's rights under § 504 of the Rehabilitation Act and the Americans with Disabilities Act by failing to provide her with a reasonable accommodation for her migraine headaches and severe emotional distress. Remedies, procedures, and rights under § 504 and the ADA are the same, and § 504 case law is also applicable to the analysis of an ADA claim. *Hoekstra v. Independent Sch. Dist., No. 283*, 103 F.3d 624, 626-27 (8th Cir. 1996). In order for a public school district to be liable under § 504 or the ADA, a plaintiff must show that the school district exhibited bad faith or gross misjudgment in failing to provide a reasonable accommodation to a student with a disability as defined by the statute. *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982). The Court must strike a "proper balance between the rights of handicapped children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields." *Id.* As long as the state officials exercise professional judgment, not departing grossly from accepted standards among professional educators, there is no liability for a school district under § 504 or the ADA. *Id.*

In *Heidemann v. Rother*, 84 F.3d 1021 (8th Cir. 1996), the plaintiff was a nine-year-old nonverbal, mentally and physically disabled girl who also suffered from epilepsy. 84 F.3d at 1024. The school district's licensed physical therapist recommended that her school use a technique called "blanket wrapping" to help calm the plaintiff. *Id.* at 1024-25. The plaintiff and her mother contended that the technique was used as a means of physical restraint. *Id.* at 1026. On one occasion, the plaintiff's mother allegedly found her daughter wrapped on the floor with flies crawling around her mouth and nose, and the blanket was wrapped so tightly that the mother required assistance to remove it. *Id.* After suing the school district for a violation of § 504, the Eighth Circuit upheld the district court's summary judgment in favor of the defendants because, even in viewing

9

the evidence in the light most favorable to the plaintiff, the court could not say that the defendants deviated grossly from acceptable standards shared by qualified professionals such as the school's licensed physical therapist. *Id.* at 1032.

In *Hoekstra v. Independent Sch. Dist., No. 283*, 103 F.3d 624 (8th Cir. 1996), the parents of a disabled student filed suit against a school district under the ADA. The daughter had requested her own key to a school elevator as an accommodation for her disability. 103 F.3d at 626. However, the school had not yet established criteria for safe access to and use of the elevator, and the daughter did not receive her key until about one month after the school district had finalized the criteria. *Id.* The court held that the plaintiffs failed to demonstrate that the school's delay of the daughter's request for her own elevator key amounted to gross misjudgment or bad faith in providing her with the necessary accommodation. *Id.* at 626-27.

Here, even assuming that Doe's condition meets the definition of "disability" under § 504 or the ADA, the facts do not support the Marshalls' contention that the school district showed bad faith or gross misjudgment in providing Doe with the necessary accommodations for her disability. Upon Doe's request, the school allowed her to attend a shortened school day and, eventually, to do all her school work at home. Doe alleges that some instructors were uncooperative in helping her with assignments while she worked from home, but without more, her allegation of uncooperativeness does not amount to bad faith or gross misjudgment in accommodating Doe's disability. Doe also claims that she was denied a scholarship based on good attendance because the school counted her as absent during the period in which she worked from home, but the school records indicate that her number of absences prior to the onset of her disability disqualified her for that scholarship. Even assuming all the facts in the light most favorable to the Marshalls, they have

failed to show that the school district exhibited bad faith or gross misjudgment in allowing Doe to work from home or in their maintenance of her school work. In fact, Doe remained on track to graduate early, and the request for to work from home was her own.

Finally, the Marshalls claim that the school district violated Doe's equal protection and due process rights. The Marshalls claim that the school district deprived Doe of opportunities to graduate as valedictorian or salutatorian and participate on the school softball team, and they assert that such deprivation constituted equal protection and due process violations.

An equal protection claim can be brought as a "class of one" if Doe can show "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Costello v. Mitchell Public Sch. Dist. 79*, 266 F.3d 916, 921 (8th Cir. 2001). To establish a due process violation, Doe must demonstrate that the school district's actions "either shock the conscience or offend judicial notions of fairness or human dignity." *Id.* In *Heidmann*, the blanket-wrapping case discussed above, the court found that the school district did not violate the disabled student's equal protection rights because the restraint technique was not "beyond the scope of professionally acceptable choices." *Heidmann*, 266 F.3d at 1031. In *Costello v. Mitchell Public Sch. Dist.*, the school removed the plaintiff, a mentally retarded female, from band class because her band teacher continually mocked and degraded her in front of her classmates. 266 F.3d at 919-20. Although the school could have resolved the issue with her band class in some way other than removing her, the court held that its removal of the plaintiff from band class did not amount to a violation of her equal protection rights. *Id.*

The Marshalls cite to the Court sections of the Arkansas Constitution and Arkansas statutory law guaranteeing the right to the advantages and opportunities of education. However, the Marshalls

have not cited, and this Court has not found, any case law stating that a student is constitutionally entitled to the opportunity to graduate with a particular classification of honors. The school district adopted the new policy regarding honors and early graduates prior to the incident between Doe and S.G. and before Doe requested to do all her school work from home. The Marshalls have not shown any connection between the school district's adoption of the new policy and the issues that Doe began having at school in the spring of 2005. Although the softball coach or the school could have disciplined Doe in some way other than to remove her from the team, Doe has not demonstrated that there was no rational basis for being disciplined for cursing at member of the school's staff. Neither the school district's adoption of the new honors policy, nor Doe's removal from the softball team, nor any other action by the school district amounts to conduct that shocks the conscience or offends judicial notions of fairness or human dignity, and the Marshalls have failed to demonstrate that the school district's treatment of Doe, even if true as alleged, had no rational basis. Therefore, the Marshalls' due process and equal protection claims fail.

## CONCLUSION

Even taking the Marshalls' factual allegations as true, they have failed to create a genuine issue of material fact regarding whether Batesville School District can be liable under Title IX, § 504 of the Rehabilitation Act, the ADA, or the due process or equal protection clauses. Because the Marshalls have failed to show a genuine issue of material fact with regard to their federal claims, summary judgment is granted in favor of the defendant, Batesville School District. It is unclear from the Complaint whether the Marshalls' state law claims are directed at Batesville School District or the individual defendants who have been dismissed. The Marshalls assert that because they voluntarily dismissed the individually named defendants, their state law claims are now moot. In

any event, because the Marshalls' federal claims against the Batesville School District are dismissed with prejudice, the Court declines to address their state law claims and dismisses those without prejudice.  Batesville School District's motion for summary judgment is thus GRANTED.

    IT IS SO ORDERED this 9th day of December, 2008.

                                                                _____
                                                                J. LEON HOLMES
                                                                UNITED STATES DISTRICT JUDGE